20-mj-343 BRT

STATE OF MINNESOTA

                    ss.        AFFIDAVIT OF SARA THOMAS

COUNTY OF RAMSEY

I, Sara Thomas being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since December 2016. I was previously assigned to the ATF Atlanta Field Division's Firearms Trafficking Group, which specialized in criminal investigations related to the movement of firearms from the legal market to the illegal market. Since September 2018, I have been assigned to the ATF St. Paul Field Division, where I am involved in various facets of ATF's enforcement programs. Before I joined the ATF, I served as a sworn law enforcement officer with other agencies and departments, beginning in 2007.

2.     During my time with the ATF, I have investigated multiple cases falling within the ATF's Arson and Explosives jurisdiction. I have received significant amounts of training on the subject-matter within the ATF's jurisdiction. This training included four weeks at ATF National Academy and more than four weeks of separate training on the ATF's Arson and Explosives mission. Additionally, I have participated in advanced explosives training at the National Center for Explosives Training Research (NCETR) in Huntsville, Alabama, which focused on improvised explosives devices. I also attended advanced explosives training at New Mexico Tech

Energetic Materials Research and Training Center, which focused on homemade explosives and various responses to a variety of bombing incidents.

3.     The facts in this affidavit are based on my personal observations, my training and experience, evidence gathered pursuant to search warrants, and information obtained from other agents and witnesses.  This Affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants and does not set forth all of my knowledge about this matter.

4.     This affidavit is being submitted in support of the criminal complaint for Garrett Patrick ZIEGLER ("ZIEGLER") and Fornandous Cortez HENDERSON ("HENDERSON").  Based on my training and experience, and the facts set forth in this Affidavit.  I respectfully submit that there is probable cause to believe that ZIEGLER and HENDERSON have committed crimes in violation of 18 U.S.C § 844(i) (arson), 26 U.S.C § 5861(d) (possession of an unregistered destructive device), and 18 U.S.C. § 2 (aiding and abetting).

## INVESTIGATION SUMMARY

*Case History*

5.     Beginning on Tuesday, May 26, 2020, and continuing to the present, Minneapolis and St. Paul, Minnesota experienced widespread arson, rioting, and looting.  This unrest, and the associated damage and destruction, extended into the nearby suburbs, including Apple Valley, Minnesota.  The rioting and looting was, in part, a response to the death of George Floyd during an encounter with the Minneapolis Police Department in Minneapolis, Minnesota.

6.      Through an investigation into these arsons, the ATF discovered that several individuals attempted to use Molotov cocktails[1] to firebomb government buildings and privately owned businesses.  In this particular case, ZIEGLER and HENDERSON used Molotov cocktails to start multiple fires inside of the Dakota County Western Service Center ("DCWSC").

7.      The DCWSC is located at 14955 Galaxie Avenue, in Apple Valley, Minnesota.  The building houses a number of state and local agencies and organizations, including, but not limited to:

    a.  Dakota County court facilities, including courtrooms and judges' chambers;

    b.  Dakota County Office of Planning;

    c.  Dakota County Office of Parks;

    d.  Dakota County Office of Public Health, including a Women, Infants and Children (WIC) clinic and office, which is funded by the U.S. Department of Agriculture;

    e.  Dakota County Transit Office;

    f.  Dakota County Social Services; and,

    g.  Dakota County Licensure Center, which issues in part, game and fishing licenses.

In addition to the aforementioned agencies and organizations, the DCWSC also houses a U.S. Passport center, provides voter registration services, and at-times serves as a polling place during elections.  Based on these facts, the DCWSC is a

---

[1] A Molotov cocktail is a glass container or bottle that holds a flammable liquid, often gasoline. A wick is inserted into the container or bottle and then lit.  The container or bottle is thrown causing fire to spread upon impact.

building used in interstate or foreign commerce.  It is also a building possessed by, or leased to, an institution(s) or organization(s) receiving federal financial assistance.

8.      In the early morning hours of May 29, 2020, the Apple Valley Police Department ("AVPD") was dispatched to a fire alarm at the DCWSC.  Once on scene, AVPD Officers observed broken windows, smoke, and flames coming from the west side of the building.  AVPD Officers were able to extinguish the fires using fire extinguishers before the fire department arrived, limiting the amount of fire and smoke damage.  However, considerable damage was done to the building by the sprinkler system, which was activated by the fire.

9.      Prior to extinguishing the fire, AVPD Officers heard voices in a neighboring business parking lot near the west side of the DCWSC.  Officers located a set of Ford car keys in the grass between the DCWSC and the parking lot.  Once the fire was extinguished, AVPD Officers determined that the car keys belonged to a Ford Fiesta bearing the Minnesota license plate BBT392, parked in the neighboring business' parking lot.  The vehicle was registered to ZIEGLER.  Officers additionally observed two baseball bats and a flexible cooler leaned against the driver's side of the vehicle.  The vehicle was ultimately towed to the AVPD while Officers obtained a search warrant.

10.      Within minutes of extinguishing the fire in the DCWSC, AVPD Officers located two males walking on County Road 42, within two blocks of the DCWSC.  As Officers approached, they observed one of the males mouth "shit" to the other.  The males were later identified as HENDERSON and ZIEGLER.  Officers noticed that

ZIEGLER was breathing heavily and was sweaty, which was not consistent with the outside temperature. When Officers attempted to interact with HENDERSON and ZIEGLER, both were uncooperative and evasive. Officers determined that they needed to detain these two males for further questioning and attempted to do so.

11.     AVPD Officers ordered ZIEGLER and HENDERSON to stop, but they did not. Instead, they continued walking away from the Officers. ZIEGLER repeatedly resisted the Officers while HENDERSON fled and was apprehended a short distance away. Officers discovered that ZIEGLER was carrying a knife on his person, while HENDERSON had a lighter on his person.

12.     After being apprehended, ZIEGLER informed an AVPD Officer that he lost his glasses near the DCWSC and requested that Officers retrieve them. Officers located ZIEGLER's glasses between his vehicle and the DCWSC, and provided them to him during his interview at the police station.

13.     In a *Mirandized* interview, HENDERSON told AVPD Officers that he had been with ZIEGLER from approximately 9:00pm on May 28, 2020, until they were apprehended in the early morning of May 29, 2020. HENDERSON claimed that he and ZIEGLER travelled via Metro Transit to "North Minneapolis," which he described as 38th and Chicago—the site of the incident involving George Floyd and the associated protests. HENDERSON claimed that after participating in protests at this location for about 45 minutes, he and ZIEGLER returned to Apple Valley via Metro Transit, at which time they were confronted by police officers. I am aware that HENDERSON's account of his whereabouts during this time is not credible, in part

because Metro Transit ceased train and bus operations at 4:00pm on May 28, 2020, due to the civil unrest associated with Mr. Floyd's death.

14.     On May 29, 2020, AVPD Detective Tara Becker photographed HENDERSON and ZIEGLER at the Apple Valley Police Department and swabbed their hands for residue.  Detective Becker noted the presence of fresh, dark soot on HENDERSON's and ZIEGLER's hands.

*Vehicle Search Warrant*

15.     On May 29, 2020, AVPD Detective Bone obtained a state search warrant for ZIEGLER's Ford Fiesta vehicle.  A search of the vehicle revealed liquor bottles, a Target Ridgedale receipt dated May 28, 2020 for two $3.00 scarves and one $3.00 scarf.  Detective Bone additionally located numerous loose push pins, a black bandana with an attached $3.00 price tag, a $3.00 detached price tag for a red bandana, partially full and empty boxes of push pins, an empty cardboard box for twelve Ball brand mason jars, an empty Kingsford brand lighter fluid bottle, Swan 70% Isopropyl alcohol bottles, a plastic jar containing a clear unidentified liquid and T-pins, and a Walmart receipt dated May 27, 2020 for Nail Polish (068113135053).

*Target Inc. Employment Query*

16.     On May 29, 2020, Detective Becker contacted representatives from Target Corporation Inc., who confirmed that ZIEGLER was an employee at their Minnetonka store located at 13201 Ridgedale Drive, Minnetonka, Minnesota, and

that the items purchased on the above noted Target receipt were purchased on ZIEGLER's Target debit card.

*AVPD Scene Documentation and Evidence Collection*

17. On May 29, 2020, Detective Bone and Apple Valley Fire Marshal B. Kilmartin conducted an initial examination of DCWSC and collected numerous items of evidentiary value.

18. An examination of the DCWSC's exterior revealed numerous broken windows on the west side of the building where the judges' chambers and clerks' offices were located. Several windows appeared to be broken, each in multiple locations, indicating numerous attempts were made to break the windows.

19. Detective Bone located a broken glass container and a charred red bandana below a law clerk's window on the west exterior side of the building. In my training and experience, when combined with an accelerant and an ignition source, these items are consistent with those used in Molotov cocktails.

20. Detective Becker located an empty Equate nail polish remover bottle on the west side of the building, between where ZIEGLER's Ford Fiesta had been and the DCWSC. The nail polish remover had a bar code number of 8113135053, matching the Walmart receipt found inside the Ford Fiesta.

21. On the south side of the building, Detective Bone located additional broken glass, consistent with Ball jars and liquor bottles, pushpins, and intact glass jars containing ignitable liquid and pushpins.

22.     An examination of DCWSC's interior revealed numerous areas of fire and smoke damage.  Detective Bone located numerous burned items, such as blinds, picture frames, and office equipment.

23.     As seen in the picture below, Detective Bone located pieces of a broken glass bottle and a charred red bandana in an area of fire damage located in an office used by a clerk for one of the Dakota County district court judges chambered in the DCWSC.  In my training and experience, as well as that of the ATF's Certified Fire Investigators, these items and the fire damage observed are consistent with the use of Molotov cocktails.



*Field Analysis of Unknown Substances by the FBI*

24.     On Saturday, May 30, 2020, Federal Bureau of Investigation (FBI) Special Agents Aaron Dunn and Doug Brownback conducted a field analysis of

certain unknown substances found at the scene using a Thermo Fisher Scientific First Defender.  The First Defender provides a presumptive result, but the samples will be submitted to the ATF laboratory for complete laboratory testing.  A sample taken from one of the destructive devices found at the DCWSC was identified as propanol.  A sample taken from the jar of liquid and pushpins located inside ZIEGLER's vehicle was identified as containing 94% propanol and 2% ethanol.

25.    Propanol and ethanol are both highly flammable substances that can be easily ignited with an open flame, such as a match or lighter, making them well-suited for use in Molotov cocktails.  Ethanol is a common ingredient in nail polish remover and charcoal lighter fluid, whereas propanol is a common ingredient in isopropyl alcohol.


*Fire Investigation and Arson Determination by ATF Certified Fire Investigator*

26.    On Saturday May 30, 2020, ATF Special Agent Certified Fire Investigator Nicole Hajny conducted a fire scene examination at the DCWSC.  The fire scene examination revealed that there were at least four separate and distinct areas of origin with no communication between each of the individual fires, meaning each fire was the result of a separate act and not the result of one fire spreading to multiple locations.  Special Agent Hajny noted other factors involved, such as the recovery of at least two destructive devices, specifically Molotov cocktails, as well as additional intact components of destructive devices, broken glass containers,

vandalism, and forced entry observed in seven broken windows on the south and west exteriors of the structure.

27.     Special Agent Hajny noted that the destructive devices each consisted of a glass container filled with an ignitable liquid and a red bandana acting as a wick.   The remnants of one device (broken glass container and a charred red bandana) were located in a clerk's office on the west side of the building, as described above.   The remnants of a second device (broken glass container and a charred red bandana) were located in the grass near the base of the west exterior wall.

28.     Special Agent Hajny informed me that a Molotov cocktail, as described above, is a glass container or bottle that holds a flammable liquid.   A wick is inserted into the container or bottle and then lit.   The container or bottle is then thrown, causing fire to spread upon impact.   Because of the discovery of both intact and used Molotov cocktails at the DCWSC, Special Agent Hajny classified the fires as "incendiary" (i.e., arson).

*Query of the National Firearms Registry*

29.     A Molotov cocktail is a destructive device and a firearm, as those terms are statutorily defined.[2]   As such, Molotov cocktails must be registered on the

---

[2] Under 26 U.S.C. § 5845(a) and (f), the definition of "firearm" includes a "destructive device", which includes: "(1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device;… and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled." The definition of "make" under 26 U.S.C. § 5845(i) includes "manufacturing (other than

National Firearms Registration and Transfer Record (NFRTR), which is maintained by the ATF.

30.    On Sunday, May 31, 2020, an ATF Special Agent Chris Doukas, assigned to ATF Headquarters in Washington DC, queried the NFRTR for ZIEGLER and HENDERSON by name, date of birth, and residence.  No record was found, which indicates that neither ZIEGLER nor HENDERSON have lawfully registered any firearms or destructive devices that require registration under the National Firearms Act.

## CONCLUSION

31.    Based on these facts, I believe there is probable cause that ZIEGLER and HENDERSON have violated Title 18, United States Code, Sections 2 and 844(i) and Title 26, United States Code, Sections 5861(d), and Title 18, United States Code, Section 2, in that they each aided and abetted the other in maliciously damaging, by means of fire and explosive materials, the Dakota County Western Service Center located at 14955 Galaxie Avenue, Apple Valley, Minnesota 55124, a building used in

---

by one qualified to engage in such business in this chapter), putting together, altering, any combination of these, or otherwise producing a firearm." Case law recognizes the classification of Molotov cocktails as destructive devices under § 5845(f).  *See, e.g., United States v. Walker*, 428 F.3d 1165, 1172 (8th Cir. 2005) (concluding that "Molotov cocktails are quasi suspect in nature and that the district court did not err by instructing on knowing possession rather than specific intent"); *United States v. Simmons*, 83 F.3d 686, 688 (4th Cir. 1996) (holding that a fully assembled Molotov cocktail constituted an incendiary bomb or similar device under § 5845(f) regardless of whether a defendant had a lighter or match with which to ignite the device); *United States v. Cruz*, 492 F.2d 217, 219 (2d Cir. 1974) (recognizing that Molotov cocktails are objectively "destructive . . . [and] . . . have no use besides destruction").

11

interstate commerce, and aided and abetted the each other, in the knowing and intentional possession firearms, namely, Molotov cocktails (destructive devices), that were not registered to them in the National Firearms Registration and Transfer.


Further Your Affiant Sayeth Not.


Sara Thomas
ATF Special Agent


SUBSCRIBED and SWORN to before me by reliable
electronic means (FaceTime and email) pursuant to
Fed. R. Crim. P. 41(d)(3) on this __1__ day of June, 2020.

The Honorable Becky R. Thorson
United States Magistrate Judge

12